UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DISABLED PATRIOTS OF AMERICA, INC.,** *et al.*, | : | **Case No. 07-CV-713** |
| **Plaintiffs,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **RESERVE HOTEL, LTD.,** *et al.*, | : | <u>**MEMORANDUM & ORDER**</u> |
| **Defendants.** | : | |

Before the Court is *Plaintiffs' Verified Application for Attorneys Fees, Costs, and Expert Fees*, filed by the Plaintiffs, Disabled Patriots of America, Inc. ("the Disabled Patriots") and Derek Mortland ("Mortland") (collectively, "Plaintiffs"). (Doc. 49, The Motion.) The Defendants, Reserve Hotel, Ltd. ("Reserve") and Hotel at Reserve Square, Ltd. ("Hotel") (collectively, "Defendants"), filed a brief in opposition to the Motion (Doc. 51, Opp'n Brief), and the Plaintiffs filed a reply brief (Doc. 52, Reply Brief). Accordingly, the Motion is ripe for adjudication and, for the reasons fully articulated below, the Court **<u>GRANTS</u>** the Plaintiffs' request for fees, costs, and expenses although not in the full amount requested. The total award is **$69,317.29**.

I.    <u>**INTRODUCTION**</u>

The Plaintiffs in this case, Mortland, a disabled individual, and the Disabled Patriots, a non-profit organization of which Mortland is a member, sought injunctive relief, attorney's fees, costs, and expenses in connection with the Defendants' alleged violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*. The Defendants are or were owners of the hotel in Cleveland, Ohio, where Mortland visited on December 29-30, 2006. The hotel allegedly qualifies as a place of public accommodation under the ADA, and, thus, is subject to the requirements of the

ADA and the regulations promulgated thereunder. During his visit to the Defendants' property, Mortland, who is an individual with disabilities as defined by the ADA, allegedly encountered architectural barriers to access at the property that endangered his safety.  Mortland alleged that he desires to visit the hotel again, both to avail himself of the goods and services offered to the public and to assure that the property is accessible to disabled individuals.

After the Defendants filed their Answer (Doc. 7, Answer), a Case Management Conference ("CMC") was held and the Court established a schedule (Doc. 10, Case Management Plan I).

Subsequently, a dispute regarding the nature of the respective Defendant's ownership interest in the property arose, leading to multiple telephone status conferences with the Court (Doc. 20, Minutes of Status Conference dated Feb. 5, 2008; Doc. 21, Minutes of Status Conference dated Feb. 19, 2008), the eventual filing of an Amended Complaint adding Defendant Hotel (Doc. 22, Amended Complaint), and Answers to the Amended Complaint (Doc. 23, Reserve's Answer to Amended Complaint; Doc. 32, Hotel's Answer to the Amended Complaint).  The nature of the respective ownership interests of the Defendants also spawned letter briefing relating to whether both Defendants would adopt the expert report prepared for Reserve.  (Doc. 24, Plaintiffs' Ltr. Report re: Ownership; Doc. 26, Defendants' Ltr. Response re: Ownership.)

Because of the delay caused in large part by this dispute, the Court scheduled a second CMC to establish a new schedule.  (Doc. 34, Case Management Plan II.)  At the second CMC, the Court set the case on a fast-track toward dispositive motions and trial at the request of the Plaintiffs.  (*Id.*; *see also* Doc. 35, Bench Trial Order.)

The Plaintiffs then filed a Motion for Summary Judgment approximately one month before the deadline for doing so (Doc. 37, MSJ).  The Defendants filed a response brief (Doc. 38, Resp. in

Opp'n to MSJ), and the Plaintiffs filed a reply brief (Doc. 39, Reply in Support of MSJ).

In addition, the Plaintiffs filed a Motion to Strike the Defendants' expert report.  (Doc. 41, Motion to Strike.)  Before briefing on the Motion to Strike was complete, the parties reached an agreement resolving the liability aspects of the case.  (Doc. 48, Settlement Agreement.)  The Settlement Agreement also expressly stated that Hotel would be liable for some amount of attorney's fees, costs, and expenses, the exact amount to be determined by the Court. (*Id.* ¶ 14.)

Shortly thereafter, the parties filed a Stipulated Motion for Dismissal (Doc. 43, Stipulated Motion for Dismissal) informing the Court that they had negotiated a settlement resolving the liability aspects of the case and referring the question of an appropriate award of attorney's fees, costs, and expenses to the Court for resolution after briefing by the parties.   The Court granted the Stipulated Motion for Dismissal (Doc. 44, Dismissal Order). In accordance with the Court's instructions, the Plaintiffs then filed the Motion for attorney's fees, costs, and expenses (Doc. 49) that is now fully briefed (Docs. 51-53) and pending before the Court.   As part of that briefing, a copy of the Settlement Agreement was filed under seal.  (Doc. 48.)

## II.   LAW & ANALYSIS

### A.   AN AWARD OF ATTORNEY FEES AND COSTS IS APPROPRIATE

Although the Defendants assert that "Plaintiffs should be awarded only nominal fees and costs, *if anything*[,]" an award of attorneys fees and costs is appropriate in this case for two reasons. (Doc. 51 at 1 (emphasis added).)  First, the Settlement Agreement resolving the merits of this case specifically provides that the Defendants will pay "some amount" for fees and costs.  (Doc. 48 ¶ 14.) Therefore, while the Defendants may argue that the Plaintiffs should only receive one dollar, they are contractually precluded from arguing that the Plaintiffs are not entitled to fees and costs.  Second,

-3-

where the Settlement Agreement requires the defendants to modify the premises in question in order

to comply with the requirements of the ADA, the plaintiff is, by definition, a "prevailing party" for

purposes of the ADA provision permitting the Court to award fees to the "prevailing party" in an

ADA lawsuit.[1]  *See* 42 U.S.C. § 12205; *Habich v. City of Dearborn*, 331 F.3d 524 (6th Cir. 2003).

Accordingly, the Court finds that the Plaintiffs are entitled to some award of fees and costs, the

amount to be determined by the Court based on the parties' submissions.

> **B.      AMOUNT OF FEES AND COSTS**
>
> > **1.      The Legal Standards for Determining the Amount of Fees and Costs**
> >
> > > **a.      The Lodestar Analysis:  Determining Reasonable Attorney's Fees**

Having concluded that the Plaintiffs are entitled to attorney's fees, the Court's  primary

concern is that the fee awarded be reasonable.[2]  *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).

A fee is reasonable if it attracts competent counsel without producing a windfall.  *Id.* The starting

point for calculating a reasonable fee is the familiar "lodestar" approach.  To calculate the lodestar,

the Court multiplies the number of hours reasonably expended on the litigation by a reasonable

hourly rate.  *Id.*; *see also Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2004).

> > > **i.      Reasonable Hours**

The party or parties seeking attorneys' fees – here, the Plaintiffs -- bear the burden of proving

---

[1]  The ADA provides for attorney's fees as follows: "In any action . . . commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."  42 U.S.C. § 12205.

[2]  A district court's determination of the amount of attorneys' fees and costs under the federal civil rights fee shifting statutes is reviewed for an abuse of discretion, and the district court's "exercise of discretion is entitled to substantial deference because the rationale for the award is predominantly fact-driven."  *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 551 (6th Cir. 2008).

that the number of hours expended on the litigation was reasonable. *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Plaintiffs' counsel must make a good faith effort to exclude hours that are "excessive, redundant, or otherwise unnecessary" from a fee application, just as an attorney in private practice uses "billing judgment" to trim the fat from a bill before submitting it to a client. *Hensley*, 461 U.S. at 434. The district court should thus exclude any hours improperly submitted. *Id*. Further, the documentation offered in support of the hours charged "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 553 (6th Cir. 2008) ("[C]ounsel need not record in great detail each minute he or she spent on an item, [but] the general subject matter should be identified") (omitting internal quotations). Finally, "[w]here reductions to the requested number of hours reasonably expended on the litigation are appropriate, a court has the discretion to utilize a simple across-the-board reduction by a certain percentage as an alternative to line-by-line reductions, particularly when fee documentation is voluminous." *Project Vote v. Blackwell*, No. 06-CV-1628, 2009 WL 917737, at *6 (N.D. Ohio Mar. 31, 2009) (O'Malley, J.) (citing *Alliance Int'l, Inc. v. United States Customs Serv.*, 155 Fed. Appx. 226, 228 (6th Cir. 2005); *Hudson v. Reno*, 130 F.3d 1193, 1209 (6th Cir. 1997), *overruled on other grounds by Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001); *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) ("Where fee documentation is voluminous . . . an hour-by-hour review is simply impractical and a waste of judicial resources."); *Coulter v. Tennessee*, 805 F.2d 146, 152 (6th Cir. 1986) ("Where duplication of effort is a serious problem, as in this case, the District Court may have to make across the board reductions by reducing certain items by a percentage figure, as Judge

Morton did here in reducing this item by 50%"); *Hisel v. City of Clarksville*, No. 3:04-0924, 2007 U.S. Dist. LEXIS 71766, at *6-16 (M.D. Tenn. Sept. 26, 2007) ("While cutting hours may appear arbitrary, it is an essentially fair approach . . ., and an across-the percentage cut is a practical means of trimming the fat from a fee application.") (internal citations and quotations omitted)).

### ii.      Reasonable Rate

The Plaintiffs also bear the burden of proving that the hourly rates requested are reasonable. *Granzeier*, 173 F.3d 568, 577 (6th Cir. 1999) (citing *Hensley*, 461 U.S. at 433).  Whether the hourly rate is reasonable is determined by reference to the prevailing rate in the relevant market – *i.e.*, "the rate that is customarily paid in the community to attorneys of reasonably comparable skill, experience, and reputation."  *Project Vote*, 2009 WL 917737, at *5 (citing *Johnson v. City of Clarksville*, 256 Fed. Appx. 782, 783 (6th Cir. 2007)).  The relevant market is "the venue of the court of record," not the "geographical area wherein [counsel] maintains his office and/or normally practices."  *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000).  The hourly rate, moreover, "should not exceed the market  rates necessary to encourage competent lawyers to undertake the representation in question."  *Reed*, 179 F.3d at 472 (quoting *Coulter*, 805 F.2d at 149).  Lastly, in determining the reasonable rate, the Court has the discretionary authority to consider a party's submissions, awards in analogous cases, and its own knowledge and experience from handling similar requests for fees.  *See Project Vote*, 2009 WL 917737 at *5 (citing *Johnson v. Connecticut Gen. Life Ins., Co.*, No. 5:07-CV-167, 2008 U.S. Dist. LEXIS 24026, at *14 (N.D. Ohio Mar. 13, 2008); *Mikolajczyk v. Broadspire Servs., Inc.*, 499 F. Supp. 2d 958, 965 (N.D. Ohio 2007); *Ousley v. Gen. Motors Retirement Program for Salaried Employees*, 496 F. Supp. 2d 845, 850 (S.D. Ohio 2006)).

### iii.    The *Johnson* Factors for Adjusting the Lodestar Figure

After the Court determines the proper lodestar figure, it can adjust that amount by a multiplier or percentage based on a twelve-factor test designed to ensure that the ultimate award is reasonable. *Reed*, 179 F.3d at 471-72 & n.3 (attributing these factors, which were adopted by the Supreme Court in *Hensley*, 461 U.S. at 432), to the Fifth Circuit's opinion in *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)) (hereinafter, the "*Johnson* factors"). The twelve *Johnson* factors are:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* (quoting *Johnson*, 488 F.2d at 717-19). The eighth factor, "results obtained," is "highly important." *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citing *Hensley*, 461 U.S. at 435-36). As stated by the Sixth Circuit, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 349-50 (quoting *Hensley*, 461 U.S. at 435). Nevertheless, there is "a strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *see also Building Serv. Local 47 Cleaning Contr. Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995). Although, in practice, the twelve *Johnson* factors are often subsumed in the initial lodestar analysis, a prudent court addresses them after conducting the lodestar analysis. *Hensley*, 461 U.S. at 430 n.3.

### b.    Costs And Expenses

The costs and expenses awarded to a prevailing party must also be reasonable. *See Project Vote*, 2009 WL 917737 at *6. In civil rights cases generally, the Sixth Circuit divides recoverable

expenses into two categories:  (1) those within the penumbra of attorney's fees, *i.e.*, "incidental and necessary expenses incurred in furnishing effective and competent representation," and thus recoverable pursuant to 42 U.S.C. § 1988, and (2) costs incurred by a party to be paid to a third party other than the attorney, which are recognized as recoverable pursuant to 28 U.S.C. § 1920.  *See id.* (citing *Northcross v. Bd. of Educ. of Memphis City Sch.*, 611 F.2d 624, 639 (6th Cir. 1979) (citations omitted); *see also Sigley v. Kuhn*, No. 98-3977/99-3531, 2000 U.S. App. LEXIS 1465, at *23-26 (6th Cir. Jan. 31, 2000)).  Photocopying, paralegal expenses, travel costs, and telephone bills fall into the first category; docket fees, investigation expenses, deposition expenses, witness expenses, and costs of demonstrative exhibits fall into the second category.  *Id.*

> **2.    Application of Law: the Amount of Attorney's Fees, Costs, & Expenses**

The Plaintiffs are represented by Lawrence Fuller of Fuller, Fuller and Associates in North Miami, Florida; Thomas B. Bacon of Hollywood, Florida; and Owen B. Dunn, Jr. of Toledo, Ohio. They request a total award of attorney's fees, costs and expenses in the amount of **$83,526.24**.  (Doc. 52-12, Invoice from Fuller, Fuller & Assoc., P.A. dated Oct. 8, 2008; Doc. 49-2, Invoice from Owen B. Dunn, Esq. dated Sept. 11, 2008.)  The breakdown of this request is as follows:

| | | | |
|---|---|---|---|
| • | Attorney Lawrence Fuller | $52,437.50 | [137.70 hrs. @ $375.00/hr.] |
| • | Attorney Thomas Bacon | $15,470.00 | [47.60 hrs. @ $325.00/hr.] |
| • | Attorney Owen Dunn | $ 3,197.25 | [14.21 hrs. @ $225.00/hr.] |
| • | Paralegal | $   954.50 | [9.90 hrs. @ $115.00/hr.] |
| • | Costs & Expenses | $11,456.89 | [including travel, copying, filing fees, etc.] |
| | **Total:** | **$83,526.24** | **[200.51 attorney hrs.; 9.90 paralegal hrs.]** |

The Defendants argue that both the requested hours and the requested rates are excessive.  The Court will first conduct the lodestar analysis, then address the Defendants objections.

**a.    Lodestar Analysis**

**i.    Reasonable Hours Lodestar Analysis**

First, upon review of the Plaintiffs' billing invoices (and setting aside for the time being the Defendants' objections), the Court finds that the three attorneys and one paralegal working on this case billed a reasonable number of hours considering the extent of this litigation.  This case spanned approximately seventeen months, during which the Plaintiffs, among other things, (1) filed a complaint; (2) conducted substantial discovery including detailed investigations of the Defendants' property; (3) filed an amended complaint to address a confusing ownership issue among the Defendants regarding the property at issue; (4) corresponded with clients and opposing counsel on numerous occasions regarding settlement; (5) participated in multiple conferences with the Court; and (6) researched, briefed, and filed motions for summary judgment, to strike, and for attorney's fees, costs and expenses.

The essence of the Defendants' objections with respect to the amount of hours billed is that the Plaintiffs' counsel unnecessarily multiplied the proceedings and prolonged the litigation, thus unreasonably increasing billable hours.  The Defendants advance a number of arguments in support of this theory, each of which will be addressed in turn.

**(a).    Objection:  Failure to Provide Pre-Suit Notice**

The Defendants concede that the ADA does not require plaintiffs to provide defendants with pre-suit notice of non-compliance with the statute.  They assert, however, that failure to provide such notice may act as a general basis for the Court to reduce the award of attorney's fees, costs, and expenses.

There is no Sixth Circuit authority justifying reliance on the failure to provide pre-suit notice

-9-

as a basis for reducing otherwise appropriate attorney's fees.  As another Court within this district

recently explained:

> [T]he clear weight of authority is not to deny fees in their entirety simply because [the Disabled Patriots] did not provide prelitigation notice. While the Eleventh Circuit [in *Ass'n of Disabled Am. v. Neptune Designs*, 469 F.3d 1357, 1359-60 (11th Cir. 2006)] is careful to observe that a lack of notice may be an element of proof going to the larger question of whether a suit was unnecessarily brought, the Ninth Circuit [in *Jankey v. Poop Deck*, 537 F.3d 1122 (9th Cir. 2008)] makes a valid point that relying on a lack of prelitigation notice alone would impermissibly make such notice a virtual requirement for suit, something not intended by Congress and not required by the Act itself. Therefore, if [the Defendant] is to state a valid reason for reducing or eliminating fees because the suit was unnecessary, it must do so by something other than merely pointing to the lack of prelitigation notice. It has not done so.
>
> I am not unaware that litigation such as this is at least potentially abusive and that defendants have reason to feel aggrieved at having to pay fees to the plaintiffs for lawsuits they consider unnecessary. However, it is clear that Congress, in enacting the fee-shifting provisions of the ADA, as with other civil rights statutes, intended to ensure access to rights by those who could not afford to retain lawyers and further determined that these plaintiffs should not be required to provide prelitigation notice as a condition to bringing suit.

*Disabled Patriots of Am., Inc. v. Beverly Terrace, Ltd.*, No. 06-CV-3063, 2008 WL 4426344, at *5

(N.D. Ohio Sept. 25, 2008) (omitting footnotes).  Thus, even assuming that the Sixth Circuit would

follow the Eleventh Circuit in recognizing the failure to provide pre-suit notice as a *factor* in the

Court's analysis of an appropriate fee award, the Defendants would bear the burden of demonstrating

that failure to provide notice "is evidence of bad faith, of being unduly litigious, or of causing undue

expense."  *Id*. at *3.  Because Congress chose not to require pre-suit notice, failure to provide it

cannot alone constitute such evidence.  In this case, the Court finds that the Defendants have not

shouldered this burden.

**(b).    Objection:  Misrepresentations in the Complaint
and to the Court**

The Defendants also contend that the Motion should be denied or the award reduced because

the Complaint and Amended Complaint contain misrepresentations of fact.  As grounds for this

contention, they point to discrepancies between the violations alleged in the Amended Complaint

(Doc. 22) and those alleged in one of the reports prepared by the Plaintiffs' expert (Doc. 49-7, Rule

34 Report).  For example, although the Amended Complaint alleges an ADA violation based on

exposed pipes in restrooms, the Plaintiffs' expert's inspection report does not mention exposed

pipes.  The Defendants' essentially contend that these discrepancies illustrate that the purpose of this

lawsuit was not to "redress discrimination suffered by Mortland, but . . . to engage in a fishing

expedition to determine . . . whether there were any ADA violations at the property that might entitle

them to attorneys' fees and costs."  (Doc. 51 at 4.)  The Plaintiffs submit that these discrepancies

indicate that Mortland either did not actually stay at the hotel or misrepresented the details of his

stay.

In their Reply Brief, the Plaintiffs argue that the Defendants fail to appreciate a simple fact:

that the Complaint and Amended Complaint are based on the language of the expert's *pre-suit*

investigation report (Doc. 49-6, Pre-Suit Report), not his subsequent – and more thorough -- Rule

34 inspection report prepared during the discovery period.[3]  The Plaintiffs accurately point out that

the allegations in both complaints describing specific instances of noncompliance with the ADA are

taken directly from the expert's pre-suit investigation report (*Compare* Doc. 49-6; Doc. 1; Doc. 22).

---

[3]  The Plaintiffs' expert, David Pedraza, prepared his pre-suit investigation report on
January 9, 2007.  (Doc. 49-6.)  The original complaint in this case was filed on March 12, 2007.
(Doc. 1.)  Pedreza then inspected the property in the context of Rule 34 of the Federal Rules of
Civil Procedure.  He prepared his Rule 34 inspection report on December 6, 2007.  (Doc. 49-7.)
The Amended Complaint was filed February 26, 2008.  (Doc. 22.)

-11-

They assert that the Rule 34 inspection confirmed the existence of the violations alleged in the original complaint.  Further, the Plaintiffs attach a copy of a bill for Mortland's stay at the hotel.

The Court finds that Mortland stayed at the hotel, that Pedraza performed *two* inspections at the property (the second far more thorough than the first), and that the allegations in both complaints were taken directly from Pedraza's first report.  Although the Plaintiffs' failure to update the allegations in the Amended Complaint based on the Rule 34 inspection could be interpreted as an imprecise approach to the litigation, the Court does not view it as an effort to misinform the Court in order to gain a tactical advantage.  In fact, since the purpose of the Amended Complaint was to ensure that the proper defendants had been named, the Plaintiffs took an economical approach by leaving the remainder of the original complaint intact.  Further, in their Answers – both to the original and Amended Complaints – the Defendants either simply denied all of the specific allegations relating to noncompliance (*see* Doc. 7, Answer; Doc. 23, Reserve's Answer to the Amended Complaint) or raised this very issue as an affirmative defense (*see* Doc. 32, Hotel's Answer to the Amended Complaint).  Consequently, the Defendants addressed this issue in the context of the litigation and there is no reason to believe it added to the fees generated by the *Plaintiffs'* counsel.  In fact, it may have reduced them.

### (c).  Objection:  Travel by Out-of-State Counsel is Not Recoverable

Next, the Defendants argue that out-of-state counsel's travel time to Ohio for conferences is not recoverable because the Plaintiffs could have retained local counsel instead.  Further, the Defendants argue that, although the Plaintiffs ostensibly retained Attorney Dunn as "local counsel," he did not perform any of the usual functions of local counsel such as personally interacting with counsel for the Defendants or attending court proceedings in place of out-of-state counsel.  They

request that the Court disregard Attorney Dunn's bills.

Whether travel time is fully compensable is a question conferred to the discretion of the district court. *See Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991). As the Plaintiffs argue in their Reply Brief, the Plaintiffs are generally entitled to counsel of their choice, especially given that the choice appears reasonable in light of Fuller's national experience litigating this type of case. Further, as Judge Christopher Boyko recently noted, the Sixth Circuit has not addressed this question and other Courts within this district have compensated out-of-state counsel for reasonable travel time. *See Beverly Terrace*, 2008 WL 4426344, at *4 (N.D. Ohio Sept. 25, 2008).[4] In addition, the Court notes that several of the billing entries related to travel were divided between this case and another case, indicating an effort on the part of the Plaintiffs' out-of-state counsel to arrange their schedule efficiently to avoid needlessly inflating fees. (*See* Doc. 52-12 at 3, 8.) Accordingly, the Court finds that out-of-state counsel's travel time is reasonable, both generally and specifically, and, therefore, compensable.[5]

The Defendants arguments regarding "local counsel" Dunn are somewhat compelling, however. Although it is customary for lead counsel – Larry Fuller in this case – to attend all

---

[4] As noted in *Beverly Terrace*, 2008 WL 4426344, at *4 n.40-42, the Ninth Circuit has held that out-of-state counsel's travel expenses are fully compensable, *see Johnson v Credit Int'l*, No. 5-16696, 2007 WL 3332813, at *2 (9th Cir. Nov. 8, 2007), the Third Circuit has held that such travel expenses are generally *not* recoverable, *see Hahnemann Univ. Hosp. v. All Shore*, 514 F.3d 300, 311-12 (3d Cir. 2008), and the Second Circuit has awarded half the requested travel expenses for out-of-state counsel, *see Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008).

[5] The Court also notes that some courts hold that travel time is compensable at cost (as opposed to at the traveling attorney's hourly rate) unless the party seeking the award demonstrates that the attorney actually did legal work on the case en route. *See, e.g.*, *Shields v. Gov't Employees Hosp. Ass'n*, No. 03-CV-395, 2008 WL 1745617, at *4 (W.D. Mich. Apr. 14, 2008). The Defendants have not raised this issue as an objection, however, and, therefore, the Court declines to address it.

-13-

proceedings, the Defendants correctly point out that Dunn did not actively participate in any "local" aspects of the case, and, based on his billing entries, did essentially no legal work beyond handling the actual filing of the complaint, coordinating service of process, and monitoring the docket and case file.  None of these tasks required local counsel.  Fuller is admitted to practice before the Northern District of Ohio and well-versed in the Court's electronic filing system.  Accordingly, the Court finds it appropriate to reduce Dunn's hours.  The Court will not disregard Dunn's hours, however, because it recognizes that it is reasonable for out-of-state counsel to enlist the assistance of local counsel just in case something unexpected happens and that Dunn's hours are a very small percentage of the total.   With these considerations in mind, the Court reduces Dunn's hours by approximately 50 percent to **7.1 hours**.

> **(d).    Objection:  The Award Requested Exceeds the Plaintiffs' Cost Estimates**

The Defendants also point out that the Plaintiffs twice underestimated the cost of litigating this case by approximately $60,000.00 in their Notice and Amended Notice of Filing Other Directives (Doc. 5, Notice of Filing Other Directives; Doc. 12, Amended Notice of Filing Other Directives).

The Plaintiffs' Reply Brief points out that both Notices were filed at the beginning of the case, before complications relating to the identity of the defendant, expert inspections, and settlement became apparent, and before a motion for summary judgment was contemplated.

The Court finds the Plaintiffs' explanation credible and accurate.  At the time the Plaintiffs filed the Notices, this case appeared to be a routine ADA compliance case.  Based on the Court's own experience with this type of case, particularly cases involving the Disabled Patriots, the complications noted by the Plaintiffs are not typical.  Therefore, the fact that the Plaintiffs did not

factor these complications into its cost estimates early in the case is not significant.

      **(e).**    **Objection:  The Motions for Summary Judgment and To Strike Were Superfluous**

The Defendants contend that no fees should be awarded for work related to the Plaintiffs' Motion for Summary Judgment and Motion to Strike because both motions were gratuitously filed for no legitimate purpose.

The Court rejects this argument based on its own knowledge of the case and interaction with the parties at status conferences.  Although the parties represented to the Court that they were in settlement negotiations throughout the history of the case, each party also steadfastly maintained that it would prevail as a matter of law on certain legal issues.  In fact, based on the parties' apparent confidence in the strength of their respective position on the merits at the second CMC on May 1, 2008, the Court set the case on a fast-track toward dispositive motions and a bench trial.  Although the Defendants argue that the Plaintiffs filed their Motion for Summary Judgment prior to the dispositive motions deadline, and, thus, before the parties had a full opportunity to discuss settlement, the Plaintiffs specifically represented that they intended to file the motion prior to the deadline at the May 1 conference.  Similarly, the Motion to Strike was not surprising because it related to the Defendants' expert report, an item of discovery that had caused disputes throughout the second half of the case history.

Furthermore, upon review of the billing entries, the Court finds that the hours billed in connection with the Motion for Summary Judgment and Motion to Strike are reasonable.  Proper review and citation of appropriate authority is time consuming.  The hours the Plaintiffs' lawyers devoted to preparing these motions reflects this reality.

          **(f).**      **Objection:  No Fees Should be Awarded for Work Relating to this Motion**

The Defendants object to the Plaintiffs' request for attorney's fees relating to the hours spent briefing the motion for attorney's fees, costs, and expenses now before the Court.

The Sixth Circuit has specifically rejected a district court's decision to completely exclude hours spent preparing and litigating a petition for attorney's fees. *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 620 (6th Cir. 2007).  Indeed, the Sixth Circuit follows the "three percent rule" in determining whether the requested hours associated with litigating the amount of attorney's fees are reasonable. *See id.*, 510 F.3d at 620.  The "three percent rule" holds that the hours associated with preparing the motion requesting them should not exceed three percent of the total compensable hours. *Id.*

In this case, careful review of the billing entries submitted by the Plaintiffs indicates that Plaintiffs' counsel devoted approximately 28 hours to preparing and briefing this Motion.  (*See* Doc. 52-12.)  This represents approximately 14% of the approximately 200 attorney hours for which the Plaintiffs' requested compensation in the Motion.  (*See* Doc. 49 at 8.)  Accordingly, pursuant to the three percent rule, the Court reduces the 28 hours requested in connection with preparing this Motion to 6 hours.[6]

---

[6]  Although the Court understands the concerns regarding protracted litigation over fee awards expressed in *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986), *cert. denied* 482 U.S. 914 (1987), it also recognizes that, to some extent, this rule discourages efficiency.  The more one reduces the hours spent litigating a matter, and thus, saves their opponent money in a fee shifting case, the less time they are afforded to justify their efforts to do so.  It also creates a disincentive for defendants to negotiate in good faith on fee questions because they know the additional costs associated with litigating the question are effectively capped.  Despite these reservations, the Court acknowledges that the three percent rule is the law in this Circuit. *See Gonter*, 510 F.3d at 620; *Klein v. Central States, Se. & Sw. Areas Health & Welfare Plan*, 621 F. Supp. 2d 537, 544 (N.D. Ohio 2009).  Plaintiffs' counsel, moreover, litigates here frequently and, in fact, acted as counsel for the Disabled Patriots in a case in which the court applied the three

-16-

**(g).**    **Objection:  Some of the Attorneys' Hours Billed
Do Not Describe Legal Work**

Finally, the Defendants argue that certain entries on the billing invoices attributed to the attorneys on the case do not describe legal work, but, instead, are clerical tasks.  For example, the Defendants object to Attorney Dunn billing for time related to service of process on the Defendants (especially given that service was tasked to a process server), and challenge several of Attorney Dunn's billing entries that describe nothing more than maintaining the case file.

This objection is well-taken with respect to the hours Attorney Dunn requested that merely reflect clerical tasks such as monitoring the docket and maintaining the case file.  These hours, however, were eliminated in the discussion above.  The Court notes, moreover, that *supervision* of service of process falls within the realm of legal work and is compensable.

**ii.     Reasonable Hours – Findings**

In light of the foregoing analysis of the Defendants' arguments regarding the number of hours billed, the Court finds that the lodestar figure for reasonable hours for each time-keeper is as follows:

| | | | |
|---|---|---|---|
| • | Attorney Lawrence Fuller | 137.70 hrs. billed | Reduced to 110.3 hrs. |
| • | Attorney Thomas Bacon | 47.60 hrs. billed | Not Reduced |
| • | Attorney Owen Dunn | 14.21 hrs. billed | Reduced to 6.5 hrs. |
| | | | **Total: 164.4 hours** |

Thus, **164.4** is the lodestar figure for reasonable hours.

**iii.     Reasonable Rates Lodestar Analysis**

The second half of the lodestar analysis is to determine the reasonable hourly rates.  As explained in detail above, a reasonable hourly rate is the rate that is customarily paid to attorneys in

----

percent rule.  *Disabled Patriots of Am. v. Romulus Nights, Inc.*, No. 04-CV-60258, 2005 WL 3132206, at *3 (E.D. Mich. Nov. 22, 2005).  As this case does not present the unusual circumstances contemplated in *Coulter*, the Court will not deviate from the three percent rule under the particular circumstances of this case.

the community of reasonably comparable skill, experience, and reputation. *See Project Vote*, 2009 WL 917737, at *5 (citing *Johnson v. City of Clarksville*, 256 Fed. Appx. 782, 783 (6th Cir. 2007)); *see also Geier v. Sundquist*, 372 F.3d 784, 796-97 (6th Cir. 2004).

> **(a).** **The Plaintiffs' Requested Rates**

The Plaintiffs seek compensation at the following hourly rates:

- Lead counsel, Lawrence Fuller $375.00 per hour
- Attorney Thomas Bacon $325.00 per hour
- Attorney Owen Dunn $225.00 per hour
- Paralegal $115.00 per hour

> **(b).** **The Defendants' Objections to the Requested Rates**

The Defendants argue that these hourly rates are unreasonably high. (Doc. 51 at 13.) First, the Defendants contend that the requested hourly rates do not comport with the prevailing market rates, as established by precedent within this district. (*Id*. at 13-14.) Second, the Defendants take issue with the Plaintiffs' efforts to use Attorney Fuller's reputation to bolster his hourly rate. (*Id*. at 14.)

In support of their first argument, the Defendants principally rely upon a 2008 fees opinion by Chief Judge James Carr involving the Disabled Patriots and attorneys Lawrence Fuller and Owen Dunn. (Doc. 51 at 13-14 (citing *Disabled Patriots of Am. v. Cedar Fair, L.P.*, No. 3:06-CV-2262, 2008 WL 408695 (N.D. Ohio Jan. 18, 2008).) In *Cedar Fair*, Lawrence Fuller requested $385.00 per hour and Owen Dunn requested $225.00 per hour. 2008 WL 408695, at *2. Judge Carr reduced their requested hourly rates to $285.00 and $185.00, respectively. *Id*. He reasoned that these reduced rates appropriately reflect (1) counsel's experience; (2) the fact that the case involved only conventional law reform litigation, and that the issues in the case were not complex; and (3)

prevailing rates in the Toledo, Ohio legal market. *Id.* at *1, *3 (citing *Disabled Patriots of Am. v. Genesis Dreamplex, LLC*, No. 3:06-CV-7153, 2006 WL 2404140, at *10 (N.D. Ohio Aug. 18, 2006)). In addition, he reduced the hourly rate for paralegal time, finding that $75.00 more accurately reflects the going rate for paralegal time in the Toledo market than the requested $115.00 rate. *Id.* at *3. Finally, Judge Carr found $175.00 per hour to be a reasonable rate for expert David Pedraza's time.[7] *Id.*

In support of their argument regarding Fuller's reputation, the Defendants assert that Fuller's reputation has been tarnished by an admonishment he received from the Supreme Court of Florida in 2006. (Doc. 51 at *14-15.) They attach records indicating that the admonishment resulted from Fuller's failure to perform an adequate pre-suit investigation in an ADA compliance case. The admonishment arose out of an order issued by U.S. District Judge Donald Middlebrooks sanctioning Fuller for erroneously alleging that his client, whom he had not met until the day of his deposition was a quadriplegic, and expressing concern regarding delay in filing a motion to voluntarily dismiss the case and inform opposing counsel in other cases in which his client was characterized erroneously. (Doc. 51 at Ex. B.)

### (c).   The Plaintiffs' Reply to the Defendants' Objections

In their Reply Brief, the Plaintiffs direct the Court to a number of cases involving the Disabled Patriots, both within this district and elsewhere, in which the court set hourly rates higher than Judge Carr in *Cedar Fair*. (Doc. 52 at 8-9 (citing numerous cases).) The Plaintiffs argue that these cases demonstrate that attorneys as experienced as Fuller and Bacon, both generally and with

---

[7] As noted above, Pedreza is the Plaintiffs' expert in this case as well.

respect to ADA cases specifically, are entitled to a fee of at least $325.00 per hour.  (*Id.*)[8]

### iv.    Lodestar:  Reasonable Rates Findings

Upon full consideration of the parties' argument, the Court finds that reducing the requested hourly rates by $25.00 across the board for the attorneys and paralegal will produce reasonable rates under the circumstances of this case for purposes of the lodestar analysis.  Thus, Fuller's lodestar hourly rate is $350.00, Bacon's is $300.00, Dunn's is $200, and the paralegal's is $90.00.  The Court notes that Fuller's rate reflects an approximately $28.00 per hour ***increase*** compared to the average of the hourly rates in the cases cited by the ***Plaintiffs*** in their reply.  (*See* Doc. 52 at 9.) The average hourly rate awarded to Fuller in those cases was approximately $322.14.  (*Id.*)  The Court finds that an upward adjustment to this average is appropriate to account for inflation since several of the cases are more than five years old.  The hourly rate Fuller requested in this case, however, ($375.00) exceeds any previous award in the cases cited, except a 2007 case from the Southern District of New York, where the going rate for attorney's fees is significantly higher than the customary rate in the Northern District of Ohio.  Therefore, for purposes of setting the lodestar figure, $350.00 reflects a reasonable hourly rate in this district based on Fuller's extensive experience and expertise in litigating this type of case.  With Fuller as the touchstone, the other rates have been adjusted accordingly.

The Court notes, however, that it will consider the Defendants' other arguments based on *Cedar Fair* and Fuller's reputation in the analysis of the *Johnson* factors to determine the actual hourly rate at which the Court will award fees.

---

[8]  The Plaintiffs do not directly address the Defendants' second argument regarding Fuller's reputation.

### b.    Final Lodestar Figure

The lodestar figure is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2004).  For the foregoing reasons, the product of the reasonable hours expended and the reasonable hourly rate for each attorney is as follows:

| | | | | |
|---|---|---|---|---|
| • | Attorney Lawrence Fuller | 110.3 hrs. x | $350.00 per hr. | $38,605.00 |
| • | Attorney Thomas Bacon | 47.60 hrs. x | $300.00 per hr. | $14,280.00 |
| • | Attorney Owen Dunn | 6.50 hrs. x | $200.00 per hr. | $ 1,300.00 |
| | | | **Total:** | **$58,405.00** |

Thus, the lodestar figure for attorney's fees is **$58,405.00**.

### c.    Discussion of the *Johnson* Factors

In the Sixth Circuit, "[t]here is a 'strong presumption' that this  lodestar figure represents a reasonable fee."  *Grandview Raceway*, 46 F.3d at 1401.  This "does not end the inquiry," however.  *Id*. at 1402.  The factors listed in *Johnson*,[9] should be considered to adjust the lodestar figure to account for case-specific considerations.  As is often the case, the Court's lodestar analysis above encompasses many of the relevant *Johnson* factors.  In this case, however, the *Johnson* factors provide the Court with an opportunity to address an overarching, case-specific concern expressed

---

[9] The *Johnson* factors are:

(1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 432 (quoting *Johnson*, 488 F.2d at 717-19).

by the Defendants' in their brief in opposition to the Plaintiffs' Motion. That is, by citing to Judge Carr's analysis in *Cedar Fair*, 2008 WL 408695, at *2-3, and arguing that Fuller has a reputation for seeking attorneys fees in ADA compliance cases at the expense of fairness and professionalism, the Defendants essentially contend that attorney's fees in cases involving Fuller's law firm and the Disabled Patriots should be reduced to account for boilerplate pleadings and discovery, relatively simple and common issues of law and fact, the allegedly opportunistic tactics of Fuller's law firm and the lawyers who pursue these cases without providing pre-suit notice, and other courts' recognition of these considerations in their fee opinions.  Though the Court agrees that it is important to include these considerations in the assessment of an appropriate award in ADA compliance cases, it specifically rejects the contention that the Plaintiffs' attorneys litigated this particular case in an improper or unprofessional manner.

As Judge Carr noted in *Cedar Fair*, other Courts have reduced the plaintiffs' requested fees in cases involving Fuller for a variety of reasons.

> I note that other courts have reduced the hours and the fees claimed by plaintiffs' counsel in this case. For example, this court reduced plaintiff's requested hourly rate and the number of hours billed in a similar case. *Genesis Dreamplex, LLC*, 2006 WL 2404140, *10 (N.D.Ohio) (reducing fee from $325 to $275 and decreasing hours because of inadequate documentation). The Eastern District of Michigan also reduced plaintiff's counsel's rates and hours, deceasing the latter because the attorneys sought "compensation for an excessive number of hours." *Disabled Patriots of Am., Inc. v. Taylor Inn Enters., Inc.*, 424 F.Supp.2d 962, 969 (E.D. Mich.2006); *see also Access 4 All, Inc. v. HI 57 Hotel, LLC*, 2006 WL 196969, *3 (S.D.N.Y.2006) ("[C]ertain tasks performed by attorneys at the Fuller firm could more appropriately have been performed by a paralegal."). More recently, the District of New Jersey reduced counsel's hours after deciding that a portion of the hours billed were "not reasonably spent" or were "excessive." *Access 4 All, Inc. v. AAMJ, LLC*, 2007 WL 655491, *7-8 (D.N.J.); *see also Guckenberger v. Boston Univ.*, 8 F.Supp.2d 91, 100 (D.Mass.1998) (noting that courts must "engage in thoughtful analysis of the number of hours expended and the hourly rates charged to ensure both are reasonable") (quoted in *Access 4 All, Inc. v. Delancey Clinton Assocs., L.P.*, 2007 WL 118940, * 1-3 (D.Mass.)).

*Cedar Fair*, 2008 WL 408695, at *2.  Review of the cases cited by Judge Carr indicates that courts

recognize that ADA compliance cases deserve special scrutiny to ensure that the efficiencies the

plaintiffs' attorneys gain by litigating a high volume of similar cases simultaneously is passed on to

the defendants in the form of reduced liability for attorney's fees and costs.  As explained by the

Eastern District of Michigan:

> Fuller, Fuller & Associates has thus benefitted from an economy of scale. While the
> firm is deserving of a reasonable fee, it is not entitled to a windfall at the Defendant's
> expense. *See Coulter v. State of Tennessee*, supra, 805 F.2d at 149 ("Legislative
> history speaks of 'fees which are adequate to attract competent counsel, but which
> do not produce windfalls,'..and cautions against allowing the statute to be used as a
> 'relief fund for lawyers' ")(internal citations to Congressional Record omitted).[10]

*Disabled Patriots of Am., Inc. v. Taylor Inn Enters., Inc.*, 424 F.Supp.2d at 969 (omitting

footnotes).[11]  It is important to note that the mandate to avoid providing attorneys with a windfall

---

[10]  The Legislative History of the attorney's fees statute for cases arising under the Civil
Rights Act, 42 U.S.C. § 1988, could hardly be clearer regarding the importance of providing for
fees to vindicate civil rights violations:

> The purpose and effect of S. 2278 are simple-- it is designed to allow courts to
> provide the familiar remedy of reasonable counsel fees to prevailing parties in
> suits to enforce the civil rights acts which Congress has passed since 1866.  S.
> 2278 follows the language of Titles II and VII of the Civil Rights Act of 1964, 42
> U.S.C. 2000a-3(b) and 2000e-5(k), and section 402 of the Voting Rights Act
> Amendments of 1975, 42 U.S.C. 1973l(e). All of these civil rights laws depend
> heavily upon private enforcement, and fee awards have proved an essential
> remedy if private citizens are to have a meaningful opportunity to vindicate the
> important Congressional policies which these laws contain.

S. Rep. 94-1011 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5908, 5909-10.  The Senate Report,
S. Rep. 94-1011, goes on to note that "[n]ot to award counsel fees in cases such as this would be
tantamount to repealing the [Civil Rights] Act itself by frustrating its basic purpose."  *Id.* at 5910.
The analogous ADA attorney's fees provision, 42 U.S.C. § 12205, serves the same purpose.

[11]  The Court in *Taylor Inn Enters.*, 424 F. Supp. 2d at 968-69, provides the following
explanation of the efficiencies the Plaintiffs' attorneys take advantage of:

> The Fuller law firm is counsel of record in at least 41 ADA cases filed in the

-23-

comes from *Congress*, but it is equally significant that, despite recognizing windfall attorney's fee

awards Congress recognized windfall attorney's fee awards as a potential issue arising from private

enforcement of the civil rights statutes, Congress still chose *not* to address the issue by requiring pre-

suit notice or heightened standards for recovery of fees and costs compared to other civil rights

causes of action.   Whether pre-suit notice should be a pre-requisite to recovery, and whether

economic incentives for attorneys to aggressively assume the role of private attorneys general in

prosecuting ADA compliance cases should continue have long been a hotly debated topic in

academic and policy circles.  *See*, *e.g.*, Samuel R. Bagenstos, *The Perversity of Limited Civil Rights*

*Remedies:  The Case of "Abusive" ADA Litigation* 54 UCLA L. Rev. 1 (Oct. 2006) (summarizing

---

Eastern District of Michigan. Of those, at least 30 were brought by the same Plaintiffs as the present case: Disabled Patriots of America, Inc. and Efrem Walker. Fuller, Fuller & Associates has filed numerous ADA actions in other districts as well. *See Access 4 All, Inc. v. Grandview Hotel*, supra at *4 (noting that "Fuller, Fuller & Associates have pursued dozens of Title III actions against various hotels in federal courts throughout New York, New Jersey, Massachusetts, and D.C."); *Access 4 All, Inc. v. Hi 57 Hotel*, supra at *3 ("Fuller, Fuller & Associates has represented plaintiffs in at least 92 [ADA] actions over the past two years"). Of course, the extensive experience of Fuller and Fuller is one factor justifying an hourly rate of $300. However, that experience also suggests that the Fullers would be able to prosecute this fairly routine ADA case with a considerably lower expenditure of time than would a rookie. As the court noted in *Brother v. Miami Hotel Investments, Ltd.*, 341 F.Supp.2d 1230, 1236 (S.D.Fla.2004), "If [plaintiff's counsel] is as good as he says he is, he should have been able to litigate this unexceptional case by utilizing the formulaic approach that served him so well in all the similar cases he handled[.]"
. . .
In addition, many of the items claimed by Lawrence Fuller, such as preparation of routine discovery requests and other documents, would be common to all of the other ADA suits filed in this Court, and either the paralegal or [Plaintiff] could have simply adapted these items to the present case, at considerably lower cost. *See Doran*, supra, 360 F.Supp.2d at 1062, where the court found "the tasks to be duplicative, tasks that could easily be accomplished by paralegals and, for the most part, tasks that had already been accomplished in prior litigation and were merely copied or adapted for this case."

-24-

the political, economic and academic arguments relating to private enforcement of the ADA motivated by the availability of statutory awards of attorney's fees).  Congress, however, has not amended the ADA to require notice, and, as noted above, at the time it enacted the ADA, Congress recognized that the express purpose of the attorney's fees provision of the statute is to provide fee awards "adequate to attract competent counsel."  Accordingly, the Court notes that, until Congress acts, the Plaintiffs' attorneys in this case and similar cases are legally – and ethically – entitled to recover fees and costs, so long as their request accounts for the any efficiencies and/or economies of scale they have personally gained by litigating in this particular area of the law.

The question to be addressed in this case, therefore, is whether the Plaintiffs' request for attorney's fees would result in a windfall for their counsel.  The Court has reviewed the billing records the Plaintiffs submitted in support of their Motion with this specific question in mind and finds that, after the reductions discussed above in the context of the lodestar analysis and with a few minor exceptions addressed below, the Plaintiffs' attorneys have exercised sound billing judgment and litigated this case in a manner that accounts for the efficiencies gained by operating an "ADA filing mill."[12]  First, the billing entries related to the initial investigation, filing of the complaint, and early case history reflect consistently short increments of time.  More substantial entries begin to appear whenever the Court became actively involved in the case (*e.g.*, for a CMC or status conference), when the parties were actively involved in settlement negotiations, depositions, or in connection with motions or the unusual disputes that arose in this case.  This is to be expected; indeed, chronologically, the billing entries are consistent with the time the Court devoted to the case

---

[12]  *See* Bagenstos at n.14 (citing the posting of Walter Olson, *Overlawyered: Chicago's ADA Filing Mill*, available at http://www.overlawyered.com/2004/03/chicagos_ada_filing_mill. html (last visited August 20, 2009).

as it progressed.  That progression involved several obstacles.  First, the parties exchanged several letters in the form of status reports to the Court regarding the Defendants' expert report and the relationship between the two Defendants.  (*See* Doc. 24; Doc. 26.)  Second, the Defendants insisted that they could prevail on the merits of at least some of the legal issues at stake, and, consequently, the Plaintiffs devoted time to drafting and filing a motion for summary judgment.  Third, the settlement agreement left the question of attorney's fees and costs to the Court, thus necessitating preparation of the Motion now before the Court and all associated briefing.  The Court does not attribute any of these obstacles to improper conduct on the part of the Plaintiffs' counsel, and, therefore, the hours devoted to addressing and overcoming the obstacles in order to ultimately settle the case are compensable.

There is, however, one general area in which a slight adjustment to the hours billed is appropriate based on the nature of the legal work involved in this type of case.  As the Defendants argue, the Plaintiffs staffed the case with three attorneys, two of whom are very experienced ADA specialists who bill at a high hourly rate, and one paralegal.  In addition, all three attorneys billed for time spent talking to one another on the telephone regarding the status of the case, and Fuller frequently billed for time spent talking to the clients.  Under the circumstances, where it is incumbent upon the Plaintiffs' counsel to actively seek to avoid unnecessary costs that will, in all likelihood, eventually be charged to the Defendants, many of these communications could have been relegated to the least experienced attorney, a paralegal, or a non-billing employee.  Accordingly, the Court will reduce the lodestar figure by 2% to account for any inefficiencies relating to internal communications.[13]

_____

[13]  This across-the-board 2% reduction is an appropriate means of addressing excess hours.  *See Coulter*, 805 F.2d at 152.  It also accounts for the reduction in costs associated with

The Court notes, however, that this reduction is *not* based on any finding that the Plaintiffs'

attorneys communicated with their client, opposing counsel, or the Court *too much*.  With this in

mind, the Court rejects the Defendants' argument that Fuller's 2006 admonishment by the Florida

Supreme Court supports a reduced award of fees in this case.  First, the Florida Bar Association's

referee's report states that the Special Master assigned to observe and supervise Fuller's practice

concluded that Fuller's problems relating to client communication, familiarity with the facts of

specific cases, and timely communication with opposing counsel "were caused by his law firm's

office procedures, which were inadequate to handle the large volume of ADA cases it had."  (Doc.

51, Ex. B.) The Special Master further testified that Fuller "fully cooperated with him, followed

through with all of [his] requests and suggestions, and that he believed [Fuller] to be fully

rehabilitated from the error he committed." (*Id*.)  If anything, this case confirms the Special Master's

assessment – Fuller was well-prepared and attentive to the details of this case throughout.  It would

be unfair to require Fuller to adopt an approach to communication that is inconsistent with the best

practices recommended by the Florida Bar Association.[14]

Accordingly, the Court awards attorney's fees in the amount of **57,236.90**.

### 3.    Application of Law: The Amount of Costs & Expenses

With the exception of the hourly rate for the paralegal's work, travel expenses for out-of-state

long-distance telephone calls.

[14]  Again, one might argue that the remedy for Fuller's heavy case load is to simply file fewer ADA cases rather than attempt to create a refined system of intraoffice and interoffice communication.  It is, however, important to balance the limitations on recoverable attorney's fees designed to account for economies of scale with Congress' expressed desire to motivate attorneys to act as private attorneys general in prosecuting ADA violations.  So long as Fuller can devote sufficient time and attention to each case he files, as he has in this case, he is performing the public service Congress sought to incentivize in each case.  The more cases he files and wins, the greater the public service.

counsel, and costs associated with service of process, the Defendants do not challenge the Plaintiffs'

requested costs and expenses.[15]  The Court has already addressed the travel issue and set the

paralegal's hourly rate at $90.00.  Therefore, the only outstanding issue is whether the Plaintiffs

unreasonably inflated costs by serving the Defendants instead of providing them with a waiver of

service.  The Plaintiffs do not address this argument in their reply brief, and, although Rule 4 of the

Federal Rules of Civil Procedure establishes the rewards and consequences of the waiver of service

alternative, the Court agrees with the Defendants that (1) it is customary to provide a waiver of

service form as a means to reduce costs and (2) opting not to do so increases costs and expenses,

particularly when the plaintiff employs a professional process server.  Accordingly, once again

invoking the Plaintiffs' counsel's duty to actively seek to avoid unnecessary costs, and in the absence

of any explanation from the Plaintiffs, the Court will not award the Plaintiffs any of the costs

associated with service.

The Court awards costs and expenses to the Plaintiffs as follows:

- Paralegal:            9.90 hours @ $90.00        $   891.00
- Other Costs & Expenses:                          $11,189.39
                                          **Total:  $12,080.39**

---

[15]  The Defendants do not challenge the hours or the hourly rate of the Plaintiffs' expert,
David Pedraza.  The Court finds Pedraza's hourly rate of $200.00 reasonable based the fact that
it is unopposed and prior cases have approved similar hourly rates for Pedraza.  *See*, *e.g.*, *Cedar
Fair*, 2008 WL 408695, at *3 (finding an hourly rate of $175.00 reasonable for Pedraza).
Although Pedraza's hourly rate in this case is higher than in *Cedar Fair*, it is a cost, not a
requested fee; it is the rate Pedraza charged the Plaintiffs', not the rate the Plaintiffs are
requesting for themselves.

**III.     CONCLUSION**

For the foregoing reasons the Court **GRANTS** *Plaintiffs' Verified Application for Attorneys*

*Fees, Costs, and Expert Fees* (Doc. 49) and **AWARDS** attorney's fees, costs, and expenses in the

amount of **$69,317.29**.[16]


**IT IS SO ORDERED.**

**s/Kathleen M. O'Malley**
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: August 20, 2009**

---

[16]  The Defendants assert that the Court should not award fees or costs for any litigation
prior to the Amended Complaint because Reserve no longer owns the property at issue and was
not a proper party to the lawsuit.  The Court rejects this argument because it was not
unreasonable for the Plaintiffs to have named Reserve initially, not being privy to the
Defendants' ownership structure and changes thereto, and because Reserve never moved for
dismissal on this basis and participated in the litigation throughout.  In any event, the Settlement
Agreement allocates liability for fees, costs and expenses to Hotel exclusively. (Doc. 48 ¶ 14).

-29-